# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Duane Thomas Lee, Movant/Defendant -vs- United States of America, Respondent/Plaintiff. | CV-16-8138-PCT-JAT (JFM) CR-05-0594-PCT-JAT **Report & Recommendation on Motion To Vacate, Set Aside or Correct Sentence** |

## I.  MATTER UNDER CONSIDERATION

Movant, following his conviction in the United States District Court for the District of Arizona, filed an Amended Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255  on February 16, 2017 (Doc. 12).  On July 10, 2107 Respondent filed its Limited Answer (herein, "Response") (Doc.  16).  Movant filed a Reply on August 14, 2017 (Doc. 22).  Following an initial report and recommendation and re-referral, Respondent filed a Supplement to Limited Answer (herein, "Supplemental Response") (Doc. 33) on April 17, 2018, and Movant filed a Supplemental Reply (Doc. 34) on April 18, 2018.

The Movant's Motion is now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 10, Rules Governing Section 2255 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II.  RELEVANT FACTUAL & PROCEDURAL BACKGROUND
## A.  FACTUAL BACKGROUND AND PROCEEDINGS AT TRIAL

Pursuant to a written Plea Agreement (CR Doc. 46; Exhibit A), Movant pled guilty to second degree murder and use or carrying a firearm in commission of a crime of

1

violence in violation of 18 U.S.C. §§ 1111 and 924(c)(1)(A)(iii). (Items filed in the underlying criminal case, CR-05-0594-PCT-JAT, are referenced herein as "CR Doc. __." Exhibits to the Response, Doc. 16, are referenced herein as "Exhibit ___.")  The Plea Agreement included the following waiver of defenses and rights of review:

> The defendant waives any and all motions, defenses, probable cause determinations, and objections which the defendant could assert to the indictment or information or to the Court's entry of judgment against the defendant and imposition of sentence upon the defendant, providing the sentence is consistent with this agreement. The defendant further waives: (1) any right to appeal the Court's entry of judgment against defendant; (2) any right to appeal the imposition of sentence upon defendant under Title 18, United States Code, Section 3742 (sentence appeals); and (3) any right to collaterally attack defendant's conviction and sentence under Title 28, United States Code, Section 2255, or any other collateral attack. The defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the defendant might file challenging his conviction or sentence in this case.

(Exhibit A, Plea Agreement at 4.)

On April 3, 2006, the Court sentenced Movant to 168 months for the second degree murder and a consecutive 120 month sentence for the firearm offense, for a combined sentence of a 288 month term of imprisonment followed by five years of supervised release. (CR Doc. 45.)

## B.  FIRST MOTION TO VACATE

On October 27, 2008, Movant filed a Petition for Writ of Habeas Corpus (in case CV-08-8141-PCT-DGC (MEA)), which was dismissed without prejudice as asserting claims properly raised in a motion to vacate.

On March 27, 2009, Movant filed a motion to vacate or set aside sentence under 28 U.S.C. § 2255, filed in case CV-09-8054-PCT-JAT (MEA). (CR Doc. 55.) On April 29, 2009, the Court denied the § 2255 motion, finding Movant's challenge to the court's jurisdiction to be without merit, and his right to file the motion waived in his guilty plea. (CR Doc. 56.)

/ /

2

## C. PRESENT MOTION TO VACATE

**Motion** – On June 24, 2006, Movant commenced the current case by filing his original Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 1). Assistant Federal Public Defender Keith Hilzendeger subsequently filed a notice of appearance (Doc. 5) on Movant's behalf.

On August 3, 2016, the Court denied the Motion as an impermissible second or successive § 2255 motion, and referred it to the Ninth Circuit Court of Appeals. (Doc. 7.) On February 16, 2017, the Ninth Circuit issued its Order (Doc. 11) granting the application to file a second or successive § 2255 motion, directing this Court to reopen the case and file Movant's proposed § 2255 motion as an amended motion in this case. The Amended Motion (Doc. 12) was filed on the same date, and service and an answer was ordered (Doc. 13), construing the motion as follows:

> Movant alleges that second degree murder under § 1111 no longer qualifies as a "crime of violence" following *Johnson* [*v. United States*, 135 S. Ct. 2551 (2015)] and that, therefore, his § 924(c) conviction is illegal. He argues that second degree murder under § 1111 no longer qualifies as a "crime of violence" for purposes of § 924(c) because it can be committed recklessly, which does not amount to the requisite use of force after *Johnson*. Therefore, he argues that his § 924(c) conviction is unconstitutional and must be vacated.

(Order 2/24/17, Doc. 13 at 2.)

**Response** - On July 10, 2017, Respondent filed its Response ("Limited Answer") (Doc. 16). Respondent argues: (1) the Motion is barred by Movant's plea waiver; (2) the Motion is barred by the statute of limitations; (3) the claim is procedurally defaulted; (4) and the claim is without merit.

**Reply** - On August 14, 2017, Movant filed a Reply (Doc. 22). Movant argues: (1) a waiver cannot be enforced against a claim that a conviction is unconstitutional; (2) *Johnson* applies to § 924(c); (3) cause and prejudice to excuse any procedural default because the claim is novel; (4) actual innocence of the § 924(c) count; and (5) any merits answer should be limited.

**Original Report & Recommendation** – On December 14, 2017, the undersigned

3

filed a Report & Recommendation (Doc. 23), concluding that Movant's Motion was barred by the waiver in his Plea Agreement. Movant objected (Doc. 24), Respondent replied (Doc. 27), Movant supplemented (Doc. 29), and Respondent supplemented (Doc. 30).

On March 27, 2018, District Judge Teilborg rejected the Report & Recommendation, based on the intervening decision in *Class v. United States*, 138 S.Ct. 798 (Feb. 21, 2018), in which the Court held that "a guilty plea by itself [does not bar] a federal criminal defendant from challenging the constitutionality of the statute of conviction on direct appeal." *Id.* at 803. Judge Teilborg observed:

> Both parties now appear to agree that the R&R's conclusion that Movant waived his ability to bring his current constitutional challenge by his plea agreement was foreclosed by Class. (see e.g. Doc. 30 at 3). Accordingly, the R&R will be rejected because of the intervening change in the law.

(Order 3/27/18, Doc. 31 at 1-2.) The referral Order anticipated further briefing on "alternative reasons why the Motion in this case should be denied," and re-referred the matter "for further proceedings and a further report and recommendation." (*Id.* at 2.)

On March 29, 2018, the Court issued an Order (Doc. 32) setting a briefing schedule, and cautioned the parties that their objections to the Report & Recommendation would not be considered, and the Court would only consider "the Amended Motion (Doc. 12), Response (Doc. 16), Reply (Doc. 22) and any supplemental response or reply filed pursuant to this Order." (Order 3/29/18, Doc. 32.)

**Supplemental Response** – On April 17, 2018, Respondent filed its Supplement to Limited Answer (herein, "Supplemental Response") (Doc. 33), reasserting defenses based on the statute of limitations, and procedural default based on the lack of prejudice as a result of *Voisine v. United States*, 136 S.Ct. 2272 (2016) regarding the requisite *mens rea*.

**Supplemental Reply** – On April 18, 2018, Movant filed his Supplemental Reply (Doc. 34), arguing that his Amended Motion is timely because based on *Johnson*, and any procedural default must be excused because he is actually innocent of violating §

4

924(c) because *Voisine* did not overrule circuit precedent.

### III.  APPLICATION OF LAW TO FACTS

#### A.  LEGAL BACKGROUND

Because the validity of Respondent's procedural defenses depend, to a large extent, upon the nature of Movant's claims, the undersigned addresses the background of Movant's *Johnson* claims as a preliminary matter.

#### 1.  The Armed Career Criminal Act

The Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 922(g), *et seq*, establishes various crimes and punishment enhancements for various offenders and offenses.  In one particular, under 18 U.S.C. § 924(e)(2), if an offender has three or more prior convictions for a "serious drug offense" or "violent felony," the ACCA increases the prison term to a mandatory minimum 15-year sentence and a maximum term of life imprisonment.

That part of the ACCA defines "violent felony" as follows:

> "any crime punishable by imprisonment for a term exceeding one year . . . that —
> (i)    has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii)    is burglary, arson, or extortion, involves the use of explosives, ***or otherwise involves conduct that presents a serious potential risk of physical injury to another.***"

18 U.S.C. § 924(e)(2)(B) (*emphasis added*).  Subsection (i) has become known as the "force clause" (or sometimes the "elements clause").  *Compare Welch v. United States*, 136 S. Ct. 1257, 1261 (2016) ("[s]ubsection (i) of this definition is known as the elements clause"), *with United States v. Parnell*, 818 F.3d 974, 977 (9th Cir. 2016) ("§ 924(e)(2)(B)(i), known as the force clause").  The emphasized portion of subsection (ii) of the definition has become known as the "residual clause."  The remainder has become known as the "enumerated offenses clause."

/ /

## 2. The Categorical Approach

**General Rule** – In deciding whether a particular conviction qualifies as a crime of violence, the courts apply the "categorical approach" set forth in *Taylor v. United States*, 495 U.S. 575 (1990). *See Amparo*, 68 F.3d at 1224-25.

> Under this approach, we do not look to the particular facts underlying the conviction, but "compare the elements of the statute forming the basis of the defendant's conviction with the elements of" a "crime of violence." The defendant's crime cannot categorically be a "crime of violence" if the statute of conviction punishes any conduct not encompassed by the statutory definition of a "crime of violence." If the statute of conviction does not qualify as a categorical "crime of violence," we sometimes then apply the modified categorical approach, which allows us to look to a narrow set of documents that are part of the record of conviction.

*United States v. Benally*, 843 F.3d 350, 352 (9th Cir. 2016).

In utilizing the "modified categorical approach," the courts are not concerned with identifying and comparing specific facts of the offense, only in identifying which version of the offense the defendant was convicted under. The purpose is "a focus on the elements, rather than the facts, of a crime." *Descamps*, 570 U.S. at 263. In discussing why it had adopted an elements focused approach, the Supreme Court has identified three reasons:

> First, it comports with ACCA's text and history. Second, it avoids the Sixth Amendment concerns that would arise from sentencing courts' making findings of fact that properly belong to juries. And third, it averts "the practical difficulties and potential unfairness of a factual approach."

*Id.* at 267.

In applying the modified categorical approach, the court is limited to such things as "indictments and jury instructions," *id.* at 257 (2013), "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information," *Shepard v. United States*, 544 U.S. 13, 26 (2005).

**Indivisible Statutes** - In *Descamps*, the Supreme Court held that "sentencing

6

courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements," 570 U.S. at 258, "i.e., one not containing alternative elements—that criminalizes a broader swath of conduct than the relevant generic offense," *id.*  Thus, the Court specifically rejected an approach which would allow reference to the record regarding an indivisible statute, concluding that it "turns an elements-based inquiry into an evidence-based one. It asks not whether 'statutory definitions' necessarily require an adjudicator to find the generic offense, but instead whether the prosecutor's case realistically led the adjudicator to make that determination." *Id.* at 266-267.

### 3.  *Johnson* **and the Residual Clause**

**Residual Clause Invalid** - On June 26, 2015, the Supreme Court held that the "residual clause" in 18 U.S.C. § 924(e)(2)(B)(ii) is unconstitutionally vague, and struck it down as a violation of the due process clause of the Fifth Amendment.  *Johnson v. United States*, 135 S.Ct. 2551 (2015).  However, the *Johnson* holding was expressly confined to the residual clause, and the Court was careful to point out that its decision "does not call into question application of the [ACCA] to the four enumerated offenses, or the remainder of the [ACCA's] definition of a violent felony."  *Id*. at 2563.  Thus, *Johnson* does not affect the constitutionality of sentencing enhancements premised on § 924(e)(2)(B)(i) (the "force clause") or the first portion of § 924(e)(2)(B)(ii) (the "enumerated offenses clause").

**Johnson Retroactive** - The Supreme Court subsequently determined, in *Welch v. United States*, 136 S.Ct. 1257, 1268 (2016), that *Johnson* stated a "substantive rule that has retroactive effect in cases on collateral review."

### 4.  **Application of** *Johnson*  **to § 924(c)**

#### a.   **Statutory Differences**

Of course, Movant was not sentenced pursuant to 18 U.S.C. § 924(e)(2).  But

instead was convicted of and subjected to the mandatory sentence required by 18 U.S.C. § 924(c). That section provides, in pertinent part, that "any person who, during and in relation to any crime of violence or drug trafficking crime …for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--(i) be sentenced to a term of imprisonment of not less than 5 years."

Like the definition of "violent felony" in § 924(e)(2) addressed in *Johnson*, the definition of "crime of violence" in § 924(c) includes a "residual clause." The statute provides:

> (3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and--
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). "Courts generally refer to the '(A)' clause of section 924(c)(3) as the 'force clause' and to the '(B)' clause of section 924(c)(3) as the 'residual clause.'" *United States v. Bell*, 158 F. Supp. 3d 906, 910 (N.D. Cal. 2016).[1]

Thus, both §924(e)(2) and § 924(c)(3) contain a "residual clause." The clauses are not, however, identical. The clause in § 924(e)(2) which was invalidated in *Johnson* extended to a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). In contrast, the residual clause in § 924(c) differs by: (1) referring to a "substantial risk" rather than a "serious potential risk"; (2) requiring the use of "physical force" rather than the occurrence of "physical injury"; and (3) extending to the use of such force "against the person or property of another" rather than being limited to physical injury to a person.

---

[1] In contrast, Respondents refer to § 924(c)(3)(A) as the "elements clause." (*See* Response, Doc. 16 at 5.)

8

### b.   No Controlling Authority

Neither Movant nor Respondent points to any controlling authority concluding that § 924(c)(3)(B) is sufficiently analogous to § 924(e)(2)(B)(ii) that the ruling or reasoning in *Johnson* should necessarily invalidate the former.    The only Ninth Circuit decision found referencing the application of *Johnson* to § 924(c)(3) is the unpublished decision in *United States v. Jordan*, 15-10156, 2017 WL 975980 (9th Cir. Mar. 14, 2017).  Even there, the court simply referenced *Johnson* and related decisions, concluding they "have not so clearly displaced our earlier precedents as to warrant plain error reversal," and in a footnote specifically declined to address the defendant's argument that § 924(c)(3)(B) is unconstitutionally vague.

Indeed, Respondent contends that this very issue is the subject of the pending appeal in *United States v. Begay*, C.A. No. 14-10080.  (Response, Doc. 16 at 9.)

## B.  WAIVER BY PLEA

Respondents argue that Movant has waived his right to file the instant Motion to Vacate. (Response, Doc. 16 at 6, *et seq.*)  Indeed, Movant's Plea Agreement waived his right to bring the instant motion.  "The defendant further waives…(3) any right to collaterally attack defendant's conviction and sentence under Title 28, United States Code, Section 2255." (Exhibit B, Plea Agreement at 4.)

### 1.  Authority to Reconsider

In rejecting the original Report and Recommendation, Judge Teilborg relied on *Class* and observed that "[b]oth parties now appear to agree" that *Class* forecloses the conclusion reached by the undersigned that Movant's explicit waiver in his plea agreement precluded the instant proceeding.  (Order 3/27/18, Doc. 321 1-2.)

However, Judge Teilborg made no explicit ruling on the applicability of *Class* to the explicit waiver, and did not expressly impose limits on the scope of any further report & recommendation.

9

Nor did Judge Teilborg find that Respondent had waived its waiver defense, merely that Respondent "appear[s] to agree" that *Class* is controlling. The undersigned does not understand that to be a finding that a stipulation or waiver has been made on the point.

Because the undersigned concludes that *Class* does not alter the conclusions reached in the original Report and Recommendation, and that determination would alter the outcome of the case (because of the conclusion reached that *Johnson* and *Fernandez-Ruiz* preclude Movant's conviction), the undersigned again addresses Movant's waiver.

### 2.  Implicit Waivers

Some constitutional rights are automatically waived by entering an unconditional guilty plea. Such rights include, among others, the right to a jury trial, the right to confront one's accusers, and the right to invoke the privilege against self-incrimination, *McCarthy v. United States*, 394 U.S. 459, 466 (1969), as well as the right to challenge constitutional defects which occur before entry of the plea. *United States v. Broce*, 488 U.S. 563, 573-74 (1989). A guilty plea breaks the chain of events that proceeded it in the criminal process. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). So, as a general rule, once a defendant enters a valid guilty plea, he can no longer raise a claim of violation of constitutional rights that arose prior to the plea. *Id.* at 267; *United States v. Benson*, 579 F.2d 508, 510 (9th Cir. 1978).

However, the courts have long recognized exceptions to this rule for certain claims that go to "the very power of the State" to prosecute. *See e.g. Blackledge v. Perry*, 417 U.S. 21 (1974) (vindictive prosecution in violation of due process); *Menna v. New York*, 423 U.S. 61 (double jeopardy defense); *United States v. Broce*, 488 U.S. 563 (1989) (limiting *Menna* to double jeopardy claims that appear on the face of the record). In *Class*, the Court extended the exceptions to include challenges to the constitutionality of the statute of conviction.  138 S.Ct. at 803.

### 3.  Enforceability of Explicit Waivers

In addition to the implicit waiver resulting from a guilty plea, the Ninth Circuit regularly enforces "knowing and voluntary" waivers of appellate rights in criminal cases, provided that the waivers are part of negotiated guilty pleas, *see United States v. Michlin*, 34 F.3d 896, 898 (9th Cir.1994), and do not violate public policy, *see United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir.1996) (cataloguing public policy exceptions). Similarly, the right to collateral review may be waived.  *See United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir.1993).   Such waivers usefully preserve the finality of judgments and sentences imposed pursuant to valid plea agreements.  *See Baramdyka*, 95 F.3d at 843.

### 4.  Enforceability of Waivers with Regard to Sentencing

Movant argues, however, that his claim is that his sentence was illegal, and such a claim cannot be validly waived.  (Amended Motion, Doc. 12 at 4.)

However, a defendant's rights to challenge any sentencing errors may be explicitly waived.  *See e.g. United States v. Bolinger*, 940 F.2d 478, 480 (9th Cir.1991).  Further, where a waiver specifically includes the waiver of the right to attack a sentence, then it also waives "the right to argue ineffective assistance of counsel at sentencing." *U.S. v. Nunez*, 223 F.3d 956, 959 (9th Cir. 2000).   Here, Movant's waiver extended to sentencing issues. (*See*  Exhibit A, Plea Agreement at 4.)

It is true there are some flavors of errors at sentencing that are not waivable.  *See e.g. United States v. Bolinger*, 940 F.2d 478, 480 (9th Cir.1991) (sentence violates the terms of the plea agreement); *United States v. Johnson*, 67 F.3d 200, 203 n. 6 (9th Cir.1995) ("sentencing error could be entirely unforeseeable and therefore not barred"); *United States v. Jacobson*, 15 F.3d 19 (2nd Cir.1994) (sentencing disparity among co-defendants based entirely on race); *United States v. Marin*, 961 F .2d 493, 496 (4th Cir.1992) (sentence in excess of maximum statutory penalty or based on a constitutionally impermissible factor such as race).

In *U.S. v. Torres*, 828 F.3d 1113 (9th Cir. 2016), the Ninth Circuit recently opined: "A waiver of appellate rights will also not apply if a defendant's sentence is 'illegal,' which includes a sentence that 'violates the Constitution.'" 828 F.3d at 1125. The Court then held that a *Johnson* error in application of the sentencing guidelines (assuming there was such a thing), would render the sentence illegal and the waiver would not preclude an appeal. *Id. But see Beckles v. United States*, 137 S. Ct. 886, 894-95 (2017) (declining to apply *Johnson* to sentencing guidelines, which because advisory could not be unconstitutionally vague). Other district courts in the Ninth Circuit have read the reasoning and holding of *Torres* to also preclude enforcement of collateral attack waivers where claims were raised that the sentence was illegal. *See e.g. United States v. Johnson*, 2016 WL 6681184, at *2 (N.D. Cal. Nov. 3, 2016) (applying *Torres* to a *Johnson* attack on Sentencing Guidelines); and *Lilley v. United States*, 2016 WL 6997037, at *4 (W.D. Wash. Nov. 30, 2016) (same). *See also Williams v. United States*, 2016 WL 4917017, at *3 (W.D.N.Y. Sept. 15, 2016) (applying *Torres* to collateral attack waiver).

The undersigned perceives no reason to differentiate between waivers of appellate rights and waivers of collateral attack rights. The same concerns of finding a knowing waiver of future illegal acts by the court exist in both situations.

However, Movant's argument is not that his sentence was illegal, but that his conviction was illegal. No exception to the enforceability of a waiver applies based on the illegality of the conviction. Indeed, as discussed hereinabove, guilty pleas themselves (without an express waiver) amount to waivers of attacks on the constitutionality of the conviction itself.

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

*United States v. Broce*, 488 U.S. 563, 569 (1989).  The *Broce* court observed that there was no exception merely because the attack was a constitutional one, citing *Brady v. United States*, 397 U.S. 742 (1970), *McMann v. Richardson*, 397 U.S. 759 (1970), and *Tollett v. Henderson*, 411 U.S. 258, 265 (1973), cases in which constitutionally based claims were held precluded by a guilty plea.

In his Motion and original Reply, Movant relied on *United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007) for the proposition that a waiver cannot extend to a conviction that is unconstitutional.  (Amend. Mot. , Doc. 12 at 4; Reply, Doc. 22 at 1-2.) *Bible* made no such holding.  To the contrary, *Bibler* recognized that only very limited claims survive a guilty plea waiver: "An appeal waiver will not apply if: 1) a defendant's guilty plea failed to comply with Fed.R.Crim.P. 11; 2) the sentencing judge informs a defendant that she retains the right to appeal; 3) the sentence does not comport with the terms of the plea agreement; or 4) the sentence violates the law."  495 F.3d at 624. *Bibler's* discussion of unconstitutionality was limited to sentences: "The only exception that arguably applies to the instant case is the exception for illegal *sentences*. A *sentence* is illegal if it exceeds the permissible statutory penalty for the crime or violates the Constitution." *Id.* (emphasis added).

Distinguishing between unconstitutional convictions and unconstitutional sentences has important practical ramifications.  If the constitutionality of a sentence can be based on an argument that the conviction was unconstitutional, then arguably no constitutional claim could ever be foreclosed by a guilty plea.

Moreover, because sentences necessarily post-date entry of a plea, there is good reason to deny enforceability to waivers of illegal sentences.  The waiver applies to events yet to occur at the time the plea is made, *i.e.* events at sentencing.  The same would not apply to assertions that the pled to offense could not be established or the statute enforced, which factors would predate the plea.

//

//

13

**5.  Effect of *Class***

Subsequent to filing of the original Report & Recommendation, the Supreme Court issued its decision in *Class v. United States*, 138 S.Ct. 798 (Feb. 21, 2018), in which the Court held that  "a guilty plea *by itself* [does not bar] a federal criminal defendant from challenging the constitutionality of the statute of conviction on direct appeal."  *Id.* at 803 (emphasis added).

Based upon that decision, District Judge Teilborg rejected the original Report & Recommendation, re-referring the case to the undersigned for further briefing on "alternative reasons why the Motion in this case should be denied."

*Class* turned on deciding when claims based on antecedent constitutional violations are automatically waived by a guilty plea, and when they are not.  The Court concluded that when a claim challenges the Government's power to criminalize the defendant's admitted conduct, and thereby call into question the Government's power to constitutionally prosecute him, "a guilty plea does not bar a direct appeal."  *Id.* at 805.  However, most constitutional challenges do continue to be waived by an unconditional guilty plea.

Of course, here, Respondent does not merely rely upon Movant's entry of a guilty plea as barring his claims.  Instead, Respondent has relied upon an explicit waiver contained within Movant's written Plea Agreement.

In *Class*, the Court rejected the Government's argument that the movant had expressly waived his right to appeal his constitutional claim because the Government had conceded the plea agreement "does not contain this waiver."  138 S.Ct. at 807.   The Court also rejected the argument that the oral advisal by the judge on appellate rights resulted in a waiver, finding the advisal too indeterminate to support a finding of a waiver beyond that implicit in the plea.  *Id.*  Here, in contrast, Respondent has not explicitly conceded that Movant's explicit waiver did not extend to the claims he raises in his Motion to Vacate.

Nothing in *Class* held that such a waiver cannot be made, or would be

unenforceable.[2]

The undersigned has not identified any circuit court cases explicitly applying *Class* to refuse enforcement of an explicit waiver in a plea agreement. *Cf. United States v. Bacon*, 884 F.3d 605, 609 (6th Cir. 2018) (applying *Class* to permit challenge, but finding no "explicit waivers"); and *United States v. St. Hubert*, 883 F.3d 1319 (11th Cir. 2018) (applying *Class* to permit challenge, but with no explicit waiver identified).

One Ninth Circuit case has at least approached the issue. In *United States v. Obak*, 884 F.3d 934 (9th Cir. 2018), the Ninth Circuit addressed a pleading defendant's venue challenge, concluding that the claim would been waived by entry of his guilty plea, but the Government had waived the defense by failing to raise it. *Id.* at 937. In a footnote, however, the circuit court observed that the defendant had, in the plea agreement, "explicitly agreed to waive" various constitutional rights and the right to an appeal or collateral attack, but that the defendant had not raised any of those grounds on appeal. The Court then concluded: "The Supreme Court's recent decision in *Class v. United States* does not change this result." (*Id.* at n.1.) Arguably, this could be read as recognition that *Class* did not affect the enforceability of explicit waivers.

The only district court found to directly address the distinction has concluded that *Class* does not alter the enforceability of explicit waivers. *See Khan v. United States*, 2018 WL 2455920, at *10 (D.N.M. May 31, 2018). *Cf. Malvo v. Mathena*, - - - F.3d - - - , 2018 WL 3058931, at *9 (4th Cir. June 21, 2018) (finding it "far from clear" whether broad waivers of substantive constitutional rights are enforceable, that the waiver did not expressly waive the challenge, and one would not be implied in light of *Class*).

Given the Ninth Circuit's longstanding enforcement of explicit waivers that extend beyond the claims waived by the guilty plea, and the limited decision in *Class*,

---

[2] At least one court has suggested that *Class* would only apply on direct appeal, and not to a 2255 motion. *See Douglas v. United States*, 3:14-CR-412-M, 2018 WL 2432914, at *1 (N.D. Tex. May 7, 2018), *report and recommendation adopted,* 3:14-CR-412-M (1), 2018 WL 2427145 (N.D. Tex. May 30, 2018). The undersigned believes, however, that the automatic waiver of claims resulting from entry of a guilty plea applies equally to both types of proceedings.

the undersigned concludes that *Class* does not prevent the enforcement of explicit waivers of pre-existing challenges to the conviction, even if based on the unconstitutionality of the statute of conviction.

Thus, even after *Class*, Movant fails to show that his current claim lies outside his waiver, or that the waiver is unenforceable.

### 6. Conclusion Regarding Waiver

Accordingly, the undersigned again concludes that Movant's Motion is barred by his explicit waiver, notwithstanding the intervening decision in *Class*.

### C. STATUTE OF LIMITATIONS

Respondent argues that the Motion is untimely. (Response, Doc. 16 at 8, *et seq.*) Movant responds that his claim is based on *Johnson*, and thus is timely under 28 U.S.C. § 2255(f)(3). (Reply, Doc. 22 at 2-3.) In its Supplemental Response, Respondent argues that the Supreme Court's recent decision in *Sessions v. Dimaya*, applying *Johnson* to 18 U.S.C. § 16(b), and the pendency of other cases before the Supreme Court addressing § 924(c), is indicative that Movant relies on an unannounced rule, not *Johnson*, and encourages this Court to follow other courts in this district: *Torres v. United States*, No. CV-16-00406-TUCJGZ, ECF No. 17 (D. Ariz. Mar. 23, 2017); and *Antonio v. United States*, No. CV-16-00341-TUC-CKJ, ECF No. 12 (D. Ariz. June 26, 2017). (Doc. 33 at 1-2.) Movant replies to the contrary. (Supplem. Reply, Doc. 24 at 1-2.)

### 1. One Year Limitations Period

As part of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress provided a 1-year statute of limitations for all applications for motions to vacate filed pursuant to 28 U.S.C. § 2255. The statute of limitations applicable to habeas proceedings by federal prisoners has been codified at 28 U.S.C. § 2255(f), which generally provides that motions to vacate filed beyond the one year

16

limitations period are barred and must be dismissed. *Id.*

## 2. Conviction Final

A federal habeas petitioner's time to file under 28 U.S.C. §2255 generally begins to run on "the day on which the judgment of conviction becomes final." 28 U.S.C. §2255(f).[3]   Although §2255 does not define "final", the Supreme Court has applied its ordinary standard of finality.  "Finality attaches when [the Supreme] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003).

The Amended Judgment against Movant was entered on April 3, 2006.  (Cr Doc. 51.) At that time, Federal Rule of Appellate Procedure 4(b) required that a notice of appeal was to be filed within 10 days, and Rule 26(a) excluded intervening weekends and holidays.[4]   Under this rule, Movant had through April 17, 2006 to file his notice of appeal.  Movant did not do so, and consequently his time for review expired on that date, his one year commenced running the day after, and expired one year later, on Tuesday, April 17, 2007.

Movant's original Motion (Doc. 1) was not filed until June 24, 2016.  Thus, even if his Amended Motion (Doc. 12) related back to that time, Movant's Motion to Vacate, was over nine years delinquent under § 2255(f)(1).

## 3. Newly Recognized Right Made Retroactive

Movant argues that his Motion to Vacate should nonetheless be considered timely because it is based on the intervening and recent decision by the U.S. Supreme Court in

---

[3] In addition to the "new rule" provision discussed hereinafter, later commencement times can also result from an impediment, and newly discovered factual predicates for claims. *See* 28 U.S.C. § 2255(2) and (4). Movant does not assert either of these apply.

[4] In 2009, the Rules were amended to increase most 10 day deadlines to 14 days, including notices of appeal, and to eliminate the provision precluding the counting of intervening weekends and holidays for short time periods.

*Johnson.* (Reply, Doc. 22 at 2, *et seq.*)

**2255(f)(3) applies to *Johnson*** – In the course of deciding that the filing of an application to file a second or successive motion to vacate tolled the running of the statute of limitations, the Ninth Circuit has held that § 2255(f)(3) applied to a claim based on *Johnson. See Orona v. United States*, 826 F.3d 1196, 1198 (9th Cir. 2016) (relying on *Welch* to apply 2255(f)(3) and concluding the date on which Supreme Court recognized new right under *Johnson* is June 26, 2015)).

**The Rule Announced in *Johnson*** - Respondent argues that Movant's claim does not actually rely on the rule announced in *Johnson*, but on a new, unannounced rule, extending the reasoning of *Johnson* to the distinct provisions of § 924(c)(3)(B).

While Movant's ultimate right to relief might depend upon an application of *Johnson* outside its specific facts, his claim is generally that the rule of *Johnson,* as reflected by its reasoning and holding, requires the invalidation of his conviction. That Respondent disagrees with the argument (that *Johnson* invalidates § 924(c)(3)(B)) does not alter the source of the argument.

The Seventh Circuit has rejected a similar argument on a claim that *Johnson* required the vacating of a guidelines sentence based on the career offenders guidelines for a crime of violence under § 4B1.2.[5]

> The government's approach suffers from a fundamental flaw. It improperly reads a merits analysis into the limitations period. Section 2255(f)(3) runs from "the date on which the right *asserted* was initially recognized by the Supreme Court." 28 U.S.C. § 2255(f)(3) (emphasis added). It does not say that the movant must ultimately *prove* that the right applies to his situation; he need only claim the benefit of a right that the Supreme Court has recently recognized.

*Cross v. United States*, 892 F.3d 288, 293-294 (7th Cir. 2018).

---

[5] The sentences in *Cross* were imposed prior to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005) (sentencing guidelines only "advisory"), and thus were under "the then-mandatory sentencing guidelines," and thus not precluded by the Supreme Court's decision in *Beckles v. United States*, 137 S.Ct. 886 (2017), (that *Johnson* does not extend to the post-*Booker* advisory guidelines). *Cross,* 2018 WL 2730774, at *1.

Although addressing the applicability of the new *rule* requirement of § 2255(h)(2) for a second or successive motion to vacate challenging a sentencing guideline based on *Johnson*, the First Circuit has concluded that the rule of *Johnson* was not limited to the decision invalidating § 924(e):

> Congress in § 2255 used words such as "rule" and "right" rather than "holding." Congress presumably used these broader terms because it recognizes that the Supreme Court guides the lower courts not just with technical holdings but with general rules that are logically inherent in those holdings, thereby ensuring less arbitrariness and more consistency in our law.

*Moore v. United States*, 871 F.3d 72, 82 (1st Cir. 2017). [6]

Indeed, the recent decision in *Sessions v. Dimaya* indicates that the rule of *Johnson* was not limited to the specific statutory provision in that case, § 924(e), but established a standard that applied to all comparable provisions. Justice Kagan summarized the rule of *Johnson*: "As the Court again put the point, in the punch line of its decision: 'By combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause' violates the guarantee of due process." *Sessions v. Dimaya,* 138 S. Ct. 1204, 1214 (2018) (quoting *Johnson*, 135 S.Ct. at 2558).

It is that *rule* from *Johnson* on which Movant's claims rely. Accordingly,

---

[6] Section 2255(f)(3) is concerned with newly recognized *rights*. In comparison, § 2255(h)(2), which concerns second or successive motions and thus is inapplicable here, is concerned with new *rules*. The distinction, if there is one, between *rights* and *rules* is not clear. *See* Brian R. Means, *A new rule recognized by the Supreme Court*, Federal Habeas Manual § 9A:29 ("Although neither § 2244(d)(1)(C) nor § 2255(f)(3) use the term 'new rule,' but instead refer to a 'newly recognized' right that has been made retroactive, circuit courts have held that the two inquiries are equivalent.") (citing *Headbird v. U.S.*, 813 F.3d 1092, 1095–97 (8th Cir. 2016); *Butterworth v. U.S.*, 775 F.3d 459, 464–65 (1st Cir. 2015), *cert. denied*, 135 S. Ct. 1517 (2015); *U.S. v. Mathur*, 685 F.3d 396, 398–99 (4th Cir. 2012); *Figuereo-Sanchez v. U.S.*, 678 F.3d 1203, 1207 (11th Cir. 2012)). *But see United States v. Colasanti*, 282 F. Supp. 3d 1213, 1221 (D. Or. 2017) (concluding that new *rights* were something different from new *rules*) and *United States v. Hurtado-Villa*, CR-08-01249-PHX-FJM-MHB, 2011 WL 4852284, at *6 (D. Ariz. Aug. 12, 2011) ("Although the Supreme Court in *Dodd* [*v. United States*, 545 U.S. 353 (2005)] did not specifically address whether or not § 2255(f)(3) contemplates the existence of 'new rights' that do not necessarily constitute 'new rules,' the reasoning highlights the interdependence of the 'new right' and 'retroactive application' clauses of the limitations statute.").

Movant's claims based on *Johnson* do qualify under § 2255(f)(3).

### 4.  Tucson Cases Not Persuasive.

Respondent encourages this Court to follow other courts in this district: *Torres v. United States*, No. CV-16-0406-TUC-JGZ, ECF No. 17 (D. Ariz. Mar. 23, 2017); and *Antonio v. United States*, No. CV-16-0341-TUC-CKJ, ECF No. 12 (D. Ariz. June 26, 2017).  (Doc. 33 at 1-2.)

In *Torres*, District Judge Zipps declined to find that *Johnson* qualified as a new *rule* applicable to other cases for purposes of § 2255(f)(3).  But that decision was based on "the current state of the law" (CV-16-0406, Order, Doc. 17 at 5), and was before the decision in *Sessions v. Dimaya*.  Moreover, Judge Zipps recognized the potential for disagreement and granted a certificate of appealability, and Torres has appealed.  (*Id.* at 5-6.)

In *Antonio*, District Judge Jorgenson similarly declined to find a new rule applicable to § 924(c)(3) under *Johnson*.  (CV-16-0341, Order, Doc. 12 at 8.)  Again, however, that decision was issued prior to *Sessions v. Dimaya*, and a certificate of appealability was granted, and Antonio has appealed.  (*Id.* at 7-8.)

Because *Session v. Dimaya* clarifies the rule adopted in *Johnson* was not limited to § 924(e), but created adopted a rule applicable to similar provisions, the conclusions reached by Judges Zipps and Jorgenson are not persuasive.

### 5.  Dependent Claims Under § 924(c)(3)(A)

It is true that to maintain a right to relief, Movant has had to not only argue that his conviction is invalid because *Johnson* invalidates the residual clause in § 924(c)(3)(B), but has also had to argue that his conviction did not qualify under the force clause of § 924(c)(3)(A).  It is also true that Movant could have asserted the latter argument prior to *Johnson*.  But doing so would have been futile because the residual clause would have still applied to maintain his conviction.

20

Thus, the merits of Movant's claim under the force clause rely just as much on the new rule in *Johnson* as the portion of his claim which is a direct attack on the residual clause.

## 6. Timeliness of Motion

A § 2255 motion based on *Johnson* is timely if it was filed within one year from the date on which *Johnson* was decided. *See* 28 U.S.C. §2255(f)(3) (one year statute of limitations for § 2255 motions begins to run from the "date on which the right asserted was initially recognized by the Supreme Court"); *Orona v. United States*, 826 F.3d 1196, 1198 (9th Cir. 2016) (date on which Supreme Court recognized new right under *Johnson* is June 26, 2015).

For purposes of counting time for a federal statute of limitations, the standards in Federal Rule of Civil Procedure 6(a) apply. *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001). Rule 6(a)(1)(A) directs that the "the day of the event that triggers the period" is excluded. Thus, the one year commenced the day after *Johnson*, or on June 27, 2015 (day one), and the last day was 364 days later, on June 26, 2016. *See In re Embry*, 831 F.3d 377, 381 (6th Cir. 2016) ("the statute of limitations for bringing claims based on *Johnson* expired on June 26, 2016, one year after *Johnson*"); *United States v. Gentry*, 194 F. Supp. 3d 1073, 1083 (D. Or. 2016) (petitioner asserting *Johnson* claim "had until June 26, 2016 to file his petition"). *See also Patterson*, 251 F.3d at 1246 (applying "anniversary method" under Rule 6(a) to find that one year grace period from adoption of AEDPA statute of limitations, on April 24, 1996, commenced on April 25, 1996 and expired one year later on the anniversary of such adoption, April 24, 1997).

Accordingly, to the extent that it is based on a new rule of law in *Johnson*, Movant's Motion was timely so long as it was filed on or before June 26, 2016.

Movant's original Motion (Doc. 1) was filed on June 24, 2016, two days prior to the expiration. However, his operative pleading is his Amended Motion to Vacate (Doc. 12), which was not filed until February 16, 2017, long after the deadline.

### 7.  Nature of Amended Motion

Movant's Amended Motion was not filed directly in this Court as an amendment, but was originally filed with the Ninth Circuit.  However, the circuit court directed: "The district court is instructed to reopen case number 3:16-cv-08138-JAT and to process the proposed motion as an amended section 2255 motion."  (9th Cir. Order 2/16/17, Doc. 11 at 1.)

The circuit court made no instructions about the effective date of that filing.

The Amended Motion was "received" by the Ninth Circuit on June 28, 2016, and is dated the same date.  The undersigned discerns no basis upon which the Amended Motion could be considered actually filed on a date earlier than June 28, 2016.

Even if treated filed as of that date, Movant's Motion was filed two days after the deadline for motions based on *Johnson*, and would be untimely.

### 8.  Relation Back

However, the Ninth Circuit directed that this Court treat the Amended Motion as an amended motion.

Federal Rule of Civil Procedure 15(c), made applicable to habeas proceedings by § 2242, Federal Rule of Civil Procedure 81(a)(2), and 2255 Rule 12, provides that amendments made after the statute of limitations has run relate back to the date of the original pleading if the original and amended pleadings "ar[i]se out of the [same] conduct, transaction, or occurrence." Rule 15(c)(2).  Relation back does not occur merely because the same conviction is being attacked.  Rather, it "depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644, 659 (2005) (applying Rule 15(c)(2) to state prisoner's habeas petition).

Here, Movant's original Motion, as supplemented by his Memorandum in Support (Doc. 2) argued that his conviction under § 924(c) was invalid because *Johnson* invalidated the residual clause of § 924(c)(3)(B).  His amended motion makes the same

claim, based on the same core facts.

Movant's Amended Motion does add the argument that the conviction also does not qualify under the force clause of § 924(c)(3)(A).  (Doc. 12.)  Respondent makes no argument that Movant's force clause claim arises from a different core of operative facts. The undersigned finds no basis to conclude that it does.  To be sure, this new argument depends upon different portions of § 924(c)(3) and different authorities and principles (e.g. the requisite *mens rea*).  However, Movant does not need to resort to new factual allegations to support this claim, only legal allegations.  (Moreover, the claim is not independent of his *Johnson* claim attacking the residual clause, but a derivative claim to respond to attempts to sustain his conviction under the force clause.)

Accordingly, his Amended Motion to Vacate (Doc. 12) relates back to the date of filing of his timely original Motion (Doc. 1), June 24, 2016, two days prior to the deadline for claims based on *Johnson*.

### 9.  Conclusion re Statute of Limitations

Based on the foregoing, the undersigned concludes that Movant's Amended Motion is timely under the newly recognized right standard of 28 U.S.C. § 2255(f)(3).

### D.  PROCEDURAL DEFAULT

Respondent also argues that Movant procedurally defaulted on his claims by failing to raise them on direct appeal.  (Response, Doc. 16 at 11, *et seq.*)

Movant argues that he has shown cause and prejudice to excuse any procedural default because his vagueness claim on the residual clause of § 924(c)(3) was not available until *Johnson*.  (Reply, Doc. 22 at 3 *et seq.*)  Movant argues that his claim fits within at least two of the categories of unavailable claims under *Reed v. Ross*, 468 U.S. 1 (1984).  (*Id.* at 5.)  Movant further argues that his claims establish his actual innocence, and thus eliminate the need to show actual innocence. (*Id.* at 5-8.)

Respondent contends that Movant cannot show his vagueness claim was

23

unavailable because *Johnson* was merely adverse authority to Movant's claim. (Response, Doc. 16 at 12.) Respondent also contends that Movant cannot establish cause or his actual innocence because his claims fail on the merits. (Supplem. Response, Doc. 33 at 3.)

### 1. Failure to Raise on Direct Appeal

The general rule is "that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. U.S.*, 538 U.S. 500, 504 (2003). Thus, a Section 2255 movant raising a claim for the first time in post-conviction proceedings is in procedural default, and is precluded from asserting the claim. *Bousley v. U.S.*, 523 U.S. 614, 621 (1998) (finding default where petitioner challenging his guilty plea did not raise claim in direct appeal); *United States v. Frady*, 456 U.S. 152, 165 (1982) (noting that a motion to vacate or modify a sentence under 28 U.S.C. § 2255 cannot be used as a substitute for a direct appeal).

Movant does not contend that he asserted his claims on direct appeal.

Accordingly, the undersigned concludes that Movant has procedurally defaulted on his claims.

### 2. Cause and Prejudice

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent'." *Bousley*, 523 U.S at 622 (citations omitted).

#### a. Cause Based on Unavailability

Movant relies on the unavailability of his claim at the time of direct appeal as a basis for asserting cause.

Indeed, cause can arise where previously unavailable claims are raised. "We have

24

held that a claim that 'is so novel that its legal basis is not reasonably available to counsel' may constitute cause for a procedural default." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)).  But "the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." *Smith v. Murray*, 477 U.S. 527, 537 (1986).  In *Reed v. Ross*, 468 U.S. 1 (1984), the Court identified three situations in which claims can be deemed unavailable to a defendant based on changes in the law:

> In *United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), we identified three situations in which a "new" constitutional rule, representing " 'a clear break with the past,' " might emerge from this Court. First, a decision of this Court may **explicitly overrule** one of our precedents. Second, a decision may "overtur[n] a longstanding and widespread practice to which this Court has not spoken, but which a **near-unanimous body of lower court authority** has expressly approved." And, finally, a decision may "disapprov[e] a practice this Court arguably has **sanctioned** in prior cases." By definition, when a case falling into one of the first two categories is given retroactive application, there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a state court to adopt the position that this Court has ultimately adopted. Consequently, the failure of a defendant's attorney to have pressed such a claim before a state court is sufficiently excusable to satisfy the cause requirement. Cases falling into the third category, however, present a more difficult question. Whether an attorney had a reasonable basis for pressing a claim challenging a practice that this Court has arguably sanctioned depends on how direct this Court's sanction of the prevailing practice had been, how well entrenched the practice was in the relevant jurisdiction at the time of defense counsel's failure to challenge it, and how strong the available support is from sources opposing the prevailing practice.

*Reed*, 468 U.S. at  17–18 (emphasis added).

Movant argues that his *Johnson* claim falls within the first and second categories identified in *Reed*.

**No Explicit Overruling** - Here, *Johnson* fits in the first category (at least for challenges to § 924(e)), because it explicitly overruled prior Supreme Court law.

Respondent argues, however, that Movant's claim is not directly an assertion of *Johnson,* on all fours, but an argument founded upon the holding of *Johnson*, in the separate context of  § 924(c).  If Movant's claim were founded upon the vagueness of the

residual clause in § 924(e), his claim would have required him to argue on direct appeal that the long line of cases enforcing the language in the residual clause should be reversed. *See e.g. James v. United States*, 550 U.S. 192, 216 (2007), *overruled by Johnson* (Scalia, J., dissenting) (arguing residual clause was impermissibly vague). But here, Movant's claim is an assertion that the residual clause in § 924(c)(3)(B), not § 924(e), is vague.[7]

Petitioner does not show that the Supreme Court has ever previously ruled on a vagueness challenge to § 924(c)(3)(B), nor even the similarly worded provision in § 16(b). Indeed, with regard to the latter, the Supreme Court acknowledged that it has generally avoided addressing attacks on § 16(b). *See Sessions v. Dimaya*, 138 S. Ct. at 1222–23. Thus, the undersigned does not conclude that *Johnson* "explicitly overrule[d]" Supreme Court precedent on § 924(c)(3)(B). Accordingly, the **first *Reed* circumstance** does not apply.

**No Body of Authority of Lower Courts** - An argument may also be unavailable if it is based on a decision which "overtur[ned] a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved." *Reed*, 468 U.S. at 17–18. The undersigned has not located any circuit court authority prior to *Johnson* ruling on a vagueness challenged to § 924(c)(3)(B), nor even its twin, § 16(B). Movant points to none. Thus, the **second *Reed* circumstance** does not appear to apply.

---

[7] In the past, the undersigned has declined to find a *Johnson* challenge to § 924(c) to be unavailable based on the absence of a long history of upholding § 924(c) in the face of vagueness challenges. In doing so, the undersigned relied on the declaration of the Sixth Circuit in *Taylor* about a basis for declining to apply *Johnson* to § 924(c). "[T]he Supreme Court reached its void-for-vagueness conclusion [in *Johnson*] only after struggling mightily for nine years to come up with a coherent interpretation of the clause, whereas no such history has occurred with respect to § 924(c)(3)(B)." *Taylor*, 814 F.3d at 376. *See e.g. Hoof v. United States*, CV-16-1723-PHX-ROS (JFM) (Doc. 38). That contention in *Taylor* appears to be foreclosed by the decision in *Sessions v. Dimaya* which rejected a similar argument attempting to distinguish between § 16(b) and § 924(e), noting that the Court had simply remanded cases challenging § 16(b). 138 S. Ct. at 1222–23. Nonetheless, the absence of Supreme Court cases on § 924(c)(3)(B) continues to preclude reliance on the first *Reed* circumstance.

**Sanctioned Prevailing Practice** - On the other hand, that same absence of circuit authority suggests that the Supreme Court's jurisprudence prior to *Johnson* effectively foreclosed any attacks on § 924(c)(3)(B).   The Supreme Court's "sanction of the prevailing practice" of concluding risk of force/injury statutes were not unconstitutional was fairly direct.  Indeed, the recent decision in *Sessions v. Dimaya* indicates that efforts to differentiate § 16(b) (and thus its twin § 924(c)(3)(B)) from § 924(e) (and its acceptance as not unconstitutionally vague) would have been futile.  Further, the absence of decisions indicates that the practice of treating these comparable residual clauses as unassailable on vagueness grounds was widespread in at least the Ninth Circuit.  Nor is there any indication of support from other sources opposing that prevailing practice. Indeed, it is interesting that as recently as the Supreme Court's decision in *James v. United States*, 550 U.S. 192 (2007), Justice Scalia had to raise *sua sponte* a vagueness argument in his dissent to a decision on § 924(e).   550 U.S. at 210 ("we are not persuaded by Justice SCALIA's suggestion—which was not pressed by James or his *amici*—that the residual provision is unconstitutionally vague").  Thus, the **third** ***Reed* circumstance** applies, and Movant's argument based on *Johnson* was unavailable prior to *Johnson*.

It is true that Movant's Motion also asserts derivative arguments based on the inapplicability of § 924(a) to his particular offense because it can be committed recklessly.  Those arguments are based on *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1132 (9th Cir.2006) and *Leocal v. Ashcroft*, 543 U.S. 1 (2004), which were available at the time Movant appealed in 2008.  While those arguments under § 924(c)(3)(A) were technically "available" in 2008, raising them would have been futile given the applicability of § 924(c)(3)(B).   Movant has not asserted (nor have Respondents proposed) any argument that Movant's conviction did not qualify under § 924(c)(3)(B), only that the section is unconstitutionally vague.   Thus, the merits of Movant's arguments under § 924(c)(3)(A) depend on *Johnson* for success no less than his direct arguments under § 924(c)(3)(B).  Thus, these arguments were similarly unavailable to

counsel (based on their futility) at the time of his direct appeal.

Consequently, Movant has shown cause to excuse his procedural default.

### b.    Prejudice

Respondent argues that Movant cannot show prejudice because § 924(c)(3)(B) is not unconstitutionally vague, and (based on *Voisine*) his conviction qualifies as a crime of violence under § 924(c)(3)(A).    To the contrary, as discussed hereinafter, the undersigned concludes that § 924(c)(3)(B) is unconstitutionally vague, and under the controlling rule in *Fernandez-Ruiz* his conviction does not qualify as a crime of violence under § 924(c)(3)(A).

Consequently, Movant's procedural default of his claims on direct appeal is excused.

### 3.  Actual Innocence

In *Dretke v. Haley*, 541 U.S. 386, 393-394 (2004), the Court held that "a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default."

Because the undersigned concludes that Movant has shown cause and prejudice, Movant's actual innocence is not addressed.

### 4.  Conclusion re Procedural Default

Movant did not raise his claims on direct appeal, and they are procedurally defaulted.  However, he has shown cause, based on the unavailability of his claim, and prejudice to excuse his procedural default.

### E.  RESIDUAL CLAUSE - APPLICATION OF *JOHNSON* TO § 924(C)(3)(B)
### 1.  Parties Arguments

Movant argues as the foundation of his claim that his underlying conviction for

28

second degree murder under § 1111 does not constitute a "crime of violence" because the residual clause in § 924(c)(3)(B) is void for vagueness under *Johnson*, as applied in *Dimaya* to the identical residual clause in § 16(b).

Respondent does not counter this contention, focusing instead on the application of the force clause under § 924(c)(3)(A). (Response, Doc. 16 at 13; Supplem. Response, Doc. 33 at 2-3.)

**2. No Controlling Authority**

As discussed hereinabove in Section III(A)(4)(b), neither Movant nor Respondent points to any controlling authority concluding that the residual clause of § 924(c)(3)(B) is sufficiently analogous to the residual clause of  § 924(e)(2)(B)(ii) that the ruling or reasoning in *Johnson* should necessarily invalidate the former.

The Ninth Circuit has thus far avoided deciding the issue by relying on the force clause to sustain convictions under §924(c)(3).  *See United States v. Watson,* 881F.3d 782, 784 (9th Cir. 2018); *United States v. Gutierrez*, 876 F.3d 1254 (9th Cir. 2017).  *See also United States v. Pruett*, 717 Fed. Appx. 678 (9th Cir. 2017) (unpublished); *United States v. Jordan*, 680 Fed.Appx. 634  (9th Cir. 2017) (unpublished); *United States v. Howard*, 650 Fed. Appx. 466 (9th Cir. 2016), *as amended* (June 24, 2016) (unpublished).

Indeed, in *Begay,* the Ninth Circuit ordered the parties to address whether § 924(c)(3)(B) is unconstitutionally vague, and then ordered supplementation after the Supreme Court ruled in *Sessions v. Dimaya*. *See Begay*, C.A. No. 14-10080, Order dated April 23, 2018, Doc. 90.

The district courts addressing the issue have reached varying conclusions. *See e.g United States v. Tavarez-Alvarez*, 2017 WL 2972460, at *4 (S.D. Cal. July 11, 2017) (detailing cases, and finding *Johnson* and *Dimaya* inapplicable to § 924(c)(3)). Courts in the District of Arizona are also split.  *Compare United States v. Alahmedalabdaloklah*, CR-12-01263-PHX-NVW,  2017  WL  2988236,  at  *7  (D. Ariz. July 13, 2017) (distinguishing *Johnson* and *Dimaya* to conclude § 924(c)(3)(B) is not unconstitutionally

vague) *with Urquijo v. United States*, CV-16-0417-PHX-SRB(JFM), Doc. 37 (rejecting R&R and relying on *Dimaya* and similarity of language in § 16(b) to find § 924(c)(3)(B) void for vagueness).

### 3. Weight of Authority Against Invalidating § 924(c)(3)(B)

Almost every circuit to address the issue has concluded that the two statutes are not sufficiently analogous that *Johnson* is controlling.

**Circuits holding § 924(c)(3)(B) Still Valid** - In *United States v. Taylor*, 814 F.3d 340, 375-76 (6th Cir. 2016), the **Sixth Circuit** concluded that the "crime of violence" language in 18 U.S.C. § 924(c)(3) is not unconstitutionally vague because § 924(c)(3)(B) is "considerably narrower than the statute invalidated by the Court in *Johnson* and because much of *Johnson's* analysis does not apply to § 924(c)(3)(B)"). The Sixth Circuit pointed to: (1) the distinction between physical force and physical injury; (2) the residual clause in § 924(e)(2)(B) was "linked to a confusing set of examples" that was problematic; (3) the history of the Court's struggles with developing a "coherent interpretation" of the clause; and (4) the specific circumstances in *Johnson* which do not all apply to § 924(c)(3)(B). 814 F.3d at 376.

To date, at least **Eighth, Eleventh and D.C. circuits** have reached the same conclusions on similar grounds. *See United States v. Prickett*, 839 F.3d 697, 699 (8th Cir. 2016); *Ovalles v. United States*, 861 F.3d 1257, 1265 (11th Cir. 2017);[8] *United States v. Eshetu*, 863 F.3d 946, 954 (D.C. Cir. 2017).

In *United States v. Garcia*, 857 F.3d 708, 711 (5th Cir. 2017), the **Fifth Circuit** relied on its decision upholding § 16(b) despite *Johnson*, in *United States v. Gonzalez-Longoria*, 831 F.3d 670, 676 (5th Cir. 2016)).

In contrast, in a 2016 opinion, the **Second Circuit** declined to rely on cases

---

[8]   The Eleventh Circuit reaffirmed its decision in *Ovalles* as recently as February 28, 2018. *See United States v. St. Hubert*, 883 F.3d 1319, 1327 (11th Cir. 2018).

finding § 16(b) vague, finding their reasoning "unpersuasive." *United States v. Hill*, 832 F.3d 135, 149-150 (2d Cir. 2016).  However, in a post *Dimaya* decision on rehearing, the Second Circuit "express[ed] no view as to whether the 'risk-of-force' clause, § 924(c)(3)(B), is void for vagueness," because it found the crime at issue qualified under § 924(c)(3)(A).  *United States v. Hill*, 890 F.3d 51, 53 n. 2  (2d Cir. 2018).

**Circuits Invalidating § 924(c)(3)(B)** - On the other hand, the **Seventh Circuit** has concluded that *Johnson* invalidates the residual clause in § 924(c)(3)(B).  In *United States v. Cardena*, 842 F.3d 959 (7th Cir. 2016), that Circuit concluded that "[s]ubsection [(c)(3)](B) is virtually indistinguishable from the clause in *Johnson* that was found to be unconstitutionally vague."  *Id.* at 996.  However, *Cardena* did not engage in any explicit comparison between the provisions, nor analyze the meaning of the differences in language.[9]

Similarly, as discussed hereinafter, the **Tenth Circuit** has relied on its determination that *Johnson* rendered the similarly worded 8 U.S.C. § 16(b) void, and has concluded that the residual clause in § 924(c)(3)(B) is unconstitutionally vague.  *See United States v. Salas*, 889 F.3d 681, 685 (10th Cir. 2018) (citing *Cardena*, 842 F.3d 959).  *See also United States v. Melgar-Cabrera,*  - - - F.3d - - -, 2018 WL 2749713, at *5, n.4 (10th Cir. June 8, 2018) (citing *Salas*).

### 4.  *Johnson* **Applies to § 16(b)**

The Seventh Circuit's decision in *Cardena* relied to a large extent on that circuit's

---

[9] Subsequent Seventh Circuit cases which relied on *Cardena* have been vacated and remanded for reconsideration in light of *Sessions v. Dimaya,*138 S.Ct. 1204 (Apr. 17, 2018), discussed hereinafter, where the Supreme Court concluded that 18 U.S.C. § 16(b) was vague based on *Johnson*.  *See United States v. Jenkins,* 2018 WL 2186183 (U.S. May 14, 2018); and *United States v. Jackson*, 2018 WL 2186185 (U.S. May 14, 2018).  In a subsequent case addressing § 924(c), the Seventh Circuit has "reserve[d] for our reconsideration of  *Jenkins* and *Jackson* whether [the difference between review of past offenses (like sections 924(e) and 16(b) vs. current offenses (in section 924(c))] is enough to justify jettisoning the categorical approach for section 924(c)(3)(B)" and thus avoiding the vagueness issue.  *Cross v. United States*, 2018 WL 2730774, at *10 n. 1 (7th Cir. June 7, 2018).

prior decision that "invalidated the residual clause in 18 U.S.C. § 16(b)…the same residual clause contained in the provision at issue, 18 U.S.C. § 924(c)(3)(B)." 842 F.3d at 996 (citing *United States v. Vivas–Ceja*, 808 F.3d 719, 721 (7th Cir. 2015)).

In the same way, the Ninth Circuit has concluded that the residual clause in 18 U.S.C. § 16(b) was void for vagueness under *Johnson*. *See Dimaya v. Lynch*, 803 F.3d 1110, 1120 (9th Cir. 2015), *affirmed* 138 S.Ct. 31 (2018).

The **Supreme Court** has now upheld the Ninth Circuit's decision in *Dimaya*, applying *Johnson* to 18 U.S.C. § 16(b). In ***Sessions v. Dimaya***, 138 S. Ct. 1204 (Apr. 17, 2018), the Court, "[a]dhering to our analysis in *Johnson,*" upheld the Ninth Circuit's decision in *Dimaya*, and held the definition of "crime of violence" in 18 U.S.C. § 16(b) was "impermissibly vague." 138 S. Ct. at 1210. Writing for the Court in a splintered decision,[10] Justice Kagan relied upon two features of the ACCA found in *Johnson* to conclude that § 16(b) was impermissibly vague: (1) the need for judges to look to 'an "idealized ordinary case of the crime"'; (2) combined with the lack of clarity about the "threshold level of risk." Justice Kagan explicitly rejected the contention that the existence of enumerated offenses in the ACCA, and their absence in § 16(b) was meaningful. "To say that ACCA's listed crimes failed to resolve the residual clause's vagueness is hardly to say they caused the problem." 138 S. Ct. at 1221. Justice Kagan also rejected the contention that the difference in judicial histories between the ACCA and § 16(b) was meaningful, finding that the Circuits were divided in their interpretations of § 16(b), and that it was merely serendipitous that the Supreme Court had concluded to address by opinion more of the ACCA cases. 138 S.Ct. at 1221-1223. Finally, Justice Kagan rejected the contention that the temporal limit in § 16(b), *i.e.* that the risks arise from acts taken "in the course of committing the offense," provided a basis

---

[10] Only Justices Ginsburg, Breyer and Sotomayor (and *not* Justice Gorsuch) joined in Section II (the degree of clarity required for criminal vs. civil vs. removal statutes, 138 S.Ct. at 1212-1213) and IV-A (rejecting Justice Thomas's call to look to the facts of the case, *id.* at 1216-1218) of Justice Kagan's opinion. Justice Gorsuch argued in his special concurrence that the same "fair notice" standard should apply regardless of the nature of the law, whether criminal, civil, or removal. *Id.* at 1228-1231.

for distinction.  138 S.Ct. at 1219-1220.

Chief Justice Roberts dissented, with Justices Kennedy, Thomas, and Alito joining.  In doing so, Chief Justice Roberts observed that "§ 16 is replicated in the definition of 'crime of violence' applicable to § 924(c)" but "express[ed] no view on whether § 924(c) can be distinguished from the provision we consider here." *Dimaya*, 138 S. Ct. at 1241 (Roberts, C.J., dissenting).  With regard to § 16(b), Chief Justice Roberts drew upon three differences between § 16(b) and § 924(e), including: (1) the difference between a "potential risk" (in the ACCA) and a "substantial risk" (in § 16(b)); (2) the difference between risk of injury (in the ACCA) and the risk of "physical force" (in § 16(b)); and (3) the temporal difference between a risk of injury occurring after completion of the underlying offense (in the ACCA) and the risk of use of physical force "in the course of committing" the underlying offense (in § 16(b)).  *Dimaya*, 138 S. Ct. at 1235-1238 (Roberts, C.J., dissenting).

In his dissent, Justice Thomas suggested abandoning avoiding the vagueness problem by abandoning the categorical approach, and instead looking to the facts of the particular case. *Dimaya*, 138 S.Ct. at 1242, *et seq.*  Justice Kagan, in a portion of her opinion in which Justice Gorsuch did not join, rejected Justice Thomas' suggestion, concluding that: (a) the government had not asked for such an interpretation; (b) it raised issues of judges making factual findings properly belonging to juries; (c) ignored the language of the statute; and (d) was impracticable in light of the burden of reconstructing the facts of stale convictions.  *Dimaya*, 138 S. Ct. at 1216-1218.

In his special concurrence, Justice Gorsuch declined to endorse Justice Thomas's approach, relying primarily upon the Government's failure to argue for the abandonment of the categorical approach, but also recognizing that there were other alternatives that should be developed in a case "where the parties have a chance to be heard and we might benefit from their learning."  *Dimaya*, 138 S. Ct. at 1233.

/ /

/ /

33

**5.  Cases on §16(b) Not Necessarily Controlling**

Admittedly, the application of *Johnson* to 18 U.S.C. § 16(b) is not necessarily conclusive over § 924(c)(3)(B) despite the similarity in language between the sections.

It is true that, in the aftermath of the Supreme Court's decision in *Dimaya*, the **Tenth Circuit** has concluded that § 924(c)(3) is unconstitutionally vague, relying on circuit precedent construing § 924(c)(3) and § 16(b) similarly.  *United States v. Salas*, 889 F.3d 681, 685 (10th Cir. 2018) (citing *Cardena*, 842 F.3d 959).

But, in *Shuti*, the **Sixth Circuit** distinguished its decision regarding § 924(c) in *Taylor*, and found § 16(b) vague under *Johnson*.  The court reasoned: "Unlike the ACCA and INA, which require a categorical approach to stale predicate convictions, 18 U.S.C. § 924(c) is a criminal offense that requires an ultimate determination of guilt beyond a reasonable doubt—by a jury, in the same proceeding.  This makes all the difference." *Shuti*, 828 F.3d at 449 (6th Cir. 2016).

Similarly, the **Seventh Circuit** has recognized that the whole issue may be avoided if § 924(c)(3)(B) is construed as not requiring application of the categorical approach because it can be  based on the facts of the underlying offense being currently prosecuted before the court.  *Cross*, 2018 WL 2730774, at *10 n. 1 (7th Cir. June 7, 2018).

**6.  Ninth Circuit Requires Extension to § 924(c)**

Thus, the only basis identified for distinguishing between § 16(b) and § 924(c)(3)(B) is that the latter can be applied by a jury who is addressing the facts of the underlying offense.

But in the Ninth Circuit, § 924(c)(3)(B) must be applied using the same categorical approach applicable to § 16(b).  In *U.S. v. Amparo*, 68 F.3d 1222 (9th Cir. 1995), the Ninth Circuit concluded that determinations under the residual clause of § 924(c) were not to be decided by a jury based on the facts of the immediate offense, but instead were to be determined by the court utilizing the categorical approach.  The

*Amparo* court relied on circuit precedent, legislative history and precedent from the First Circuit on § 924(c) and the Fourth Circuit on § 16(b) to hold that "application of a categorical approach to section 924(c)(3)(B) is required." 68 F.3d at 1226.

Thus, in the Ninth Circuit, just like the judge applying § 16(b) in *Dimaya,* the court (not the jury) is required to "1) measure the risk by an indeterminate standard of a 'judicially imagined 'ordinary case,' ' [rather than] real world-facts or statutory elements," or to "2) determine by vague and uncertain standards when a risk is sufficiently substantial." *Dimaya*, 803 F.3d at 1120.

On that basis, the undersigned must reject the reasoning of the Sixth Circuit in *Shuti* that distinguished between § 924(c)(3)(B) and § 16(b) based on the process for finding a crime of violence.

Moreover, most of the other bases relied upon by the Sixth Circuit in *Taylor* to distinguish § between 924(e) and §924(c)(3)(B) are foreclosed by the decision in *Sessions v. Dimaya*. The Sixth Circuit pointed to: (1) the distinction between physical force and physical injury; (2) the residual clause in § 924(e)(2)(B) was "linked to a confusing set of examples" that was problematic; (3) the history of the Court's struggles with developing a "coherent interpretation" of the clause; and (4) the specific circumstances in *Johnson* which do not all apply to § 924(c)(3)(B), *i.e.* the enumerated list of offenses. 814 F.3d at 376.

The *Taylor* court relied upon the distinction between the use of the term "physical force" in § 924(e) and "physical injury" in § 924(c). The Supreme Court rejected this distinction:

> evaluating the risk of "physical force" itself entails considering the risk of "physical injury." For those reasons, the force/injury distinction is unlikely to affect a court's analysis of whether a crime qualifies as violent. All the same crimes might—or, then again, might not—satisfy both requirements. Accordingly, this variance in wording cannot make ACCA's residual clause vague and § 16(b) not.

*Dimaya*, 138 S. Ct. at 1221.

The second reason (the enumerated offenses list in §924(e)) was also rejected.

> To say that ACCA's listed crimes failed to resolve the residual clause's vagueness is hardly to say they caused the problem. Had they done so, *Johnson* would not have needed to strike down the clause. It could simply have instructed courts to give up on trying to interpret the clause by reference to the enumerated offenses…That *Johnson* went so much further—invalidating a statutory provision rather than construing it independently of another—demonstrates that the list of crimes was not the culprit. And indeed, *Johnson* explicitly said as much. As described earlier, *Johnson* found the residual clause's vagueness to reside in just "two" of its features: the ordinary-case requirement and a fuzzy risk standard. Strip away the enumerated crimes—as Congress did in § 16(b)—and those dual flaws yet remain. And ditto the textual indeterminacy that flows from them.

*Dimaya*, 138 S.Ct. at 1221.

The third reason (the history of court struggles) was also rejected.

> But in fact, a host of issues respecting § 16(b)'s application to specific crimes divide the federal appellate courts. Does car burglary qualify as a violent felony under § 16(b)? Some courts say yes, another says no. What of statutory rape? Once again, the Circuits part ways. How about evading arrest? The decisions point in different directions. Residential trespass? The same is true. Those examples do not exhaust the current catalogue of Circuit conflicts concerning § 16(b)'s application. And that roster would just expand with time, mainly because, as *Johnson* explained, precious few crimes (of the thousands that fill the statute books) have an obvious, non-speculative—and therefore undisputed—"ordinary case."
>
> Nor does this Court's prior handling of § 16(b) cases support the Government's argument. To be sure, we have heard oral argument in only two cases arising from § 16(b) (including this one), as compared with five involving ACCA's residual clause (including *Johnson*). But while some of those ACCA suits were pending before us, we received a number of petitions for certiorari presenting related issues in the § 16(b) context. And after issuing the relevant ACCA decisions, we vacated the judgments in those § 16(b) cases and remanded them for further consideration. That we disposed of the ACCA and § 16(b) petitions in that order, rather than its opposite, provides no reason to disregard the indeterminacy that § 16(b) shares with ACCA's residual clause.

*Sessions v. Dimaya*, 138 S. Ct. at 1222–23 (citations omitted). Here, Respondents proffer nothing to show that discerning crimes of violence under § 924(c)(3)(B) has been any less problematic that § 16(b), or even § 924(e).

The fourth reason espoused in *Taylor* was that the *Johnson* Court denied invalidating the wide variety of cases relying on evaluations of risk, but pointed to the combination of that evaluation with the "confusing list of examples" in § 924(e). But

this is simply a rehashing of the *Taylor* court's second reason, the absence of the enumerated offenses, which was rejected in *Sessions v. Dimaya*. *Dimaya*, 138 S.Ct. at 1221.

Finally, the Supreme Court has rejected a distinction based on the limitation in § 924(c)(3) to risks "in the course of" the offense.

> The upshot is that the phrase "in the course of" makes no difference as to either outcome or clarity. Every offense that could have fallen within ACCA's residual clause might equally fall within § 16(b). And the difficulty of deciding whether it does so remains just as intractable. Indeed, we cannot think of a single federal crime whose treatment becomes more obvious under § 16(b) than under ACCA because of the words "in the course of." The phrase, then, cannot cure the statutory indeterminacy *Johnson* described.

*Dimaya*, 138 S. Ct. at 1220.

Thus, the undersigned finds no rational basis to distinguish between the residual clause in § 924(c)(3)(B), and the residual clauses in either § 924(e) or § 16(b), both of which have now been deemed unconstitutionally vague. Therefore, the rule in *Johnson* must apply to the residual clause in § 924(c)(3)(B), and that rule renders that provision unconstitutionally vague and therefore unenforceable.

Accordingly, for Movant's conviction under § 924(c) to apply, his conviction must qualify under § 924(c)(3)(A).

## F. FORCE CLAUSE - MENS REA

Movant argues that his conviction for second degree murder under § 1111 does not qualify as a crime of violence under the force clause in § 924(c)(3)(A) because the offense can be committed recklessly. Respondent counters that the Supreme Court's decision in *Voisine* invalidates Ninth Circuit precedent on reckless offenses, and that Movant's offense requires a heightened showing of extreme recklessness that takes it out of Ninth Circuit precedent. (Response, Doc. 16 at 14-16.)

/ /

/ /

37

**1. Use of Force**

**Required *Mens Rea*** – Section 924(c)(3)(A) defines a crime of violence as a felony that " has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  Thus, to qualify as a crime of violence under § 924(c)(3)(A), an offense must involve the "use" of physical force.

In *Leocal v. Ashcroft*, 543 U.S. 1 (2004), the Court addressed the defintions of crime of violence in 18 U.S.C. § 16, and held that the definitions under both § 16(a) and § 16(b) required the active use of force against someone, and that "accidental" or "negligent" applications of force would not suffice.

In *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1132 (9th Cir.2006) (*en banc*), the Ninth Circuit relied on *Leocal* to reverse earlier decisions and conclude that the "subjective awareness of possible injury" which underlies a *reckless* offense "is not the same as the intentional use of physical force against the person of another" which would constitute a "crime of violence" under 18 U.S.C. § 16(a).[11]  *Fernandez-Ruiz*, 466 F.3d at 1130.   The circuit court held that "the reckless use of force was not sufficiently 'intentional' to prevent an offense from being accidental." *Id.* at 1129.

**Application to § 924(c)(3)(A)** – Movant contends that although they dealt with § 16, the reasoning of *Leocal* and *Fernandez-Ruiz* apply to § 924(c)(3)(A).  Movant cites no authority for that proposition.   The cases Movant does cite all apply to other provisions. (Amended Motion, Doc. 12 at 3-4.)  *See Covarrubias Teposte v. Holder,* 632 F.3d 1049 (9th Cir. 2011) (8 U.S.C. § § 16(b)); *Malta-Espinoza v. Gonzales*, 478 F.3d 1080, 1081 (9th Cir. 2007) (8 U.S.C. §§ 1227(a)(2)(A)(iii), 1101(a)(43)(F)); and *United States v. Gomez-Leon*, 545 F.3d 777, 784 (9th Cir. 2008) (U.S.S.G. § 2L1.2(b)(1)(A)).

Respondent does not dispute that *Leocal* and *Fernandez-Ruiz* apply to § 924(c)(3)(A).   Indeed, In *United States v. Benally*, 843 F.3d 350 (9th Cir. 2016), the Ninth Circuit concluded that because the provisions of § 16 and § 924(c)(3) are

---

[11] The Ninth Circuit did "not consider 18 U.S.C. § 16(b) because Fernandez–Ruiz's assault convictions were both misdemeanors." *Fernandez-Ruiz*, 466 F.3d at 1126, n. 6.

"virtually identical," the holdings of *Leocal* and *Fernandez-Ruiz* apply to §924(c)(3)(A). 843 F.3d at 353-354.

Instead, Respondent argues those decisions have been invalidated in *Voisine v. United States*, 136 S. Ct. 2272 (June 27, 2016).

***Voisine* and Reckless Conduct** - In *Voisine*, the Supreme Court rejected the reasoning underlying *Fernandez-Ruiz* in the course of applying the definition of a "misdemeanor crime of domestic violence" to prohibit possession of a firearm under 18 U.S.C. § 922(g)(9).  The Court concluded:

> A person who assaults another recklessly "use[s]" force, no less than one who carries out that same action knowingly or intentionally.

*Voisine*, 136 S. Ct. at 2280.  Moreover, the Supreme Court expressly rejected the suggestion that its decision in *Leocal* (on which *Fernandez-Ruiz* and its progeny relied) precluded reliance upon "reckless" offenses.

> And contrary to petitioners' view, nothing in *Leocal* [ ] suggests a different conclusion—i.e., that "use" marks a dividing line between reckless and knowing conduct. In that decision, this Court addressed a statutory definition similar to § 921(a)(33)(A): there, "the use ... of physical force against the person or property of another." 18 U.S.C. § 16. That provision excludes "merely accidental" conduct, *Leocal* held, because "it is [not] natural to say that a person actively employs physical force against another person by accident." …Conduct like stumbling (or in our hypothetical, dropping a plate) is a true accident, and so too the injury arising from it; hence the difficulty of describing that conduct as the "active employment" of force. But the same is not true of reckless behavior—acts undertaken with awareness of their substantial risk of causing injury (in our contrasting hypo, hurling the plate). The harm such conduct causes is the result of a deliberate decision to endanger another—no more an "accident" than if the "substantial risk" were "practically certain."

*Voisine*, 136 S. Ct. at 2279–80 (citations omitted).

If *Voisine* controlled the interpretation of § 16 (or § 924(c)(3)), then *Leocal* and *Fernandez-Ruiz* would no longer be good law, and the potential that Movant's violation of § 1111 could be committed recklessly would have no effect.

However, the *Voisine* court did not address whether its decision extended to § 924(c)(3) and explicitly declined to resolve whether it extended to the comparable

language in § 16(b).

> Like *Leocal*, our decision today concerning § 921(a)(33)(A)'s scope does not resolve whether § 16 includes reckless behavior. Courts have sometimes given those two statutory definitions divergent readings in light of differences in their contexts and purposes, and we do not foreclose that possibility with respect to their required mental states. *Cf. United States v. Castleman*, 572 U.S. ——, ——, n. 4, 134 S.Ct. 1405, 1411, n. 6, 188 L.Ed.2d 426 (2014) (interpreting "force" in § 921(a)(33)(A) to encompass any offensive touching, while acknowledging that federal appeals courts have usually read the same term in § 16 to reach only "violent force"). All we say here is that *Leocal*'s exclusion of accidental conduct from a definition hinging on the "use" of force is in no way inconsistent with our inclusion of reckless conduct in a similarly worded provision.

*Voisine*, 136 S. Ct. at 2280, n. 4.

Thus, this Court is faced with a controlling decision, *Fernandez-Ruiz*, whose rationale has been brought into question by a more recent Supreme Court decision, *Voisine*, concerning a similar statute, but which decision denied addressing the instant language.

Under this circuit's law-of-the-circuit rule, courts are bound by a prior circuit decision unless that decision is "clearly irreconcilable with intervening Supreme Court precedent." *Biggs v. Sec'y of Cal. Dep't of Corr. & Rehab.*, 717 F.3d 678, 689 (9th Cir. 2013). "Circuit precedent...can be effectively overruled by subsequent Supreme Court decisions that are 'closely on point' even though those decisions do not expressly overrule the prior circuit precedent." *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003). The issues need not be identical; "[r]ather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Id*. at 900.

In a post–*Voisine* case, the Ninth Circuit has acknowledged that its holding in *Fernandez–Ruiz*—i.e., that " 'neither recklessness nor gross negligence is a sufficient *mens rea* to establish that a conviction is for a crime of violence under § 16' "—is in tension with *Voisine* as the latter "suggested the opposite," holding that "for purposes of a similar statute—18 U.S.C. § 921(a)(33)(A)—reckless conduct can constitute a crime of

violence." *United States v. Benally*, 843 F.3d 350, 354 (9th Cir. 2016).  But, at least two post-*Voisine* panel decisions have continued to rely on *Fernandez-Ruiz*.  *See Cornejo-Villagrana v. Sessions*, 870 F.3d 1099, 1103 (9th Cir. 2017) (applying *Fernandez-Ruiz* to § 16, although referencing *Voisine*); and *Gonzalez-Ramirez v. Sessions*, - - -  Fed. Appx. - - - , 2018 WL 3045197, at *1, n. 7 (9th Cir. June 20, 2018) (unpublished decision) (although "aware" of *Voisine*, the court noted footnote 4 from *Voisine* to conclude that the decision "does not affect our § 16(a) case law" and the pre-*Voisine* cses "remain the law of this circuit").[12]

At least some district courts in the Ninth Circuit that have addressed this issue have concluded that *Fernandez-Ruiz* still controls after *Voisine*.  *See United States v. Johnson*, 227 F. Supp. 3d 1078, 1090 (N.D. Cal. 2016) (*Fernandez-Ruiz* still controls §924(c)(3) even after *Voisine*); and *Mutee v. United States*, CV-16-01583-PHX-SRB, 2017 WL 923203, at *3 (D. Ariz. Mar. 8, 2017)  (*Fernandez-Ruiz* still controls §924(e) even after *Voisine*).[13]

---

[12]    At least two other circuits have relied on *Voisine* to overrule earlier decisions concluding a reckless offence could not establish a use of force.  *See United States v. Fogg*, 836 F.3d 951, 956 (8th Cir. 2016), *cert. denied*, 137 S. Ct. 2117 (2017) (applying *Voisine* to crime of violence requirement under § 921(a)(33)(A)); *United States v. Mendez-Henriquez*, 847 F.3d 214, 218 (5th Cir.), *cert. denied*, 137 S. Ct. 2177 (2017) (applying *Voisine*  to U.S.S.G. § 2L1.2); *United States v. Howell*, 838 F.3d 489, 501 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 1108 (2017) (applying to U.S.S.G.  § 4B1.2(a)(1)). The First Circuit, however, has declined to extend *Voisine* to § 924(e), finding that while it called into question contrary rulings, the rule of lenity required declining to apply § 924(e) to reckless conduct.  *Bennett v. United States*, 868 F.3d 1, 23 (1st Cir.), *opinion withdrawn and vacated*, 870 F.3d 34 (1st Cir. 2017) (withdrawn as moot, but leaving of record since relied upon in another published panel decision).

[13]    Many courts in the District of Arizona that have recognized the issue have avoided resolving it.  *See e.g. Percy v. USA*, CV-16-2066-PHX-DGC, 2017 WL 2838469, at *4 (D. Ariz. July 3, 2017) (declining to apply *Voisine* to a § 924(c) conviction because "Ninth Circuit case law is clear that second degree murder requires a higher degree of culpability than the plain recklessness found insufficient in *Fernandez-Ruiz*"); *United States v. Gray*, CR-15-8076-PCT-DGC, 2017 WL 3675383, at *3 (D. Ariz. Aug. 25, 2017) (same); *United States v. Blatchford*, CR-16-8085-PCT-GMS, 2017 WL 2480703, at *2 (D. Ariz. June 7, 2017) (avoiding *Voisine* issue applying "crime of violence" provision in 18 U.S.C. § 2250 because § 113(a)(6) requires "that the volitional act be willful or intentional[, although] an intent to cause injury is not required"); *Mays v. United States*, CR-08-1218-PHX-FJM, 2017 WL 1417736, at *7 (D. Ariz. Mar. 2, 2017), *report and recommendation adopted sub nom. Mays v. USA*, 2017 WL 1407672 (D. Ariz. Apr. 20, 2017) (avoiding *Voisine* issue because other felonies met requirements

Thus, although the Ninth Circuit has itself recognized that there is a "tension" between *Fernandez-Ruiz* and *Voisine, Benally*, 843 F.3d at 354, the Circuit has yet to find the two irreconcilable, and at least one panel has instead continued to rely on *Fernandez-Ruiz* even after *Voisine*. *See Cornejo-Villagrana*, 870 F.3d at 1103. If a panel of the circuit court is bound to continue to apply *Fernandez-Ruiz*, notwithstanding *Voisine*, this Court must do so as well.

Accordingly, if § 1111 can be committed recklessly, it cannot qualify as a crime of violence under the holding of *Fernandez-Ruiz*.

## 2. *Mens Rea* Required by § 1111

Movant's argument under *Fernandez-Ruiz* is founded upon the conclusion that his conviction for second degree murder under § 1111 could be founded upon reckless conduct, citing *United States v. Houser*, 130 F.3d 867, 871 (9th Cir. 1997), and that thus under *Fernandez-Ruiz* it cannot qualify as a crime of violence. (Amend. Mot., Doc. 12 at 35.)

Respondent counters that *Fernandez-Ruiz* may be distinguished because second degree murder requires "recklessness *with extreme disregard for human life*." Respondent further argues that even after *Leocal* and *Fernandez-Ruiz*, the Ninth Circuit has repeatedly held that second degree murder is a crime of violence. (Response, Doc. 16 at 13-14 (citing, *inter alia*, *United States v. J.J.*, 704 F.3d 1219, 1222 (9th Cir. 2013) *United States v. Begay*, 567 F.3d 540, 552 (9th Cir. 2009), *overruled on other grounds*, 637 F.3d 1038 (9th Cir. 2011), *United States v. Wilson*, 221 F. App'x 551, 552 (9th Cir. 2007)).)

At least one court in this District has agreed, and has concluded that because of

under § 924(e)). The same is true in other districts. *See e.g. United States v. Hutcherson,* 2016 WL 6650383, at *3 n.3 (N.D. Cal. Nov. 10, 2016); *Gaines v. United States*, 248 F. Supp. 3d 959, 968 (C.D. Cal. 2017); *Wade v. United States*, 242 F. Supp. 3d 974, 984 (C.D. Cal. 2017); *United States v. Ramirez-Gonzalez*, 2016 WL 3670045, at *7 (N.D. Cal. July 11, 2016); and *United States v. Ross*, 2017 WL 1288425, at *3 (D. Mont. Apr. 6, 2017).

the heightened recklessness (i.e. "with extreme disregard for human life") required for second degree murder, that offense has the *mens rea* required to establish a crime of violence. *See Percy v. USA,* CV-16-02066-PHX-DGC, 2017 WL 2838469 (D. Ariz. July 3, 2017); and *United States v. Gray*, CR-15-08076-PCT-DGC, 2017 WL 3675383, at *3 (D. Ariz. Aug. 25, 2017).

Conversely, at least one other court in this circuit had concluded to the contrary. *See United States v. Birdingground,* 2018 WL 3187358, at *4 (D. Mont. June 28, 2018) (citing *Quijada-Aguilar v. Lynch*, 799 F.3d 1303, 1306-07 (9th Cir. 2015)).

The undersigned notes that none of the cases cited by Respondent analyze whether, or explicitly hold, that a reckless second degree murder has the requisite *mens rea* to constitute a crime of violence.

In *United States v. J.J.*, the court was deciding whether the district court had properly permitted the prosecution of a juvenile as an adult on a crime of violence under the Federal Juvenile Delinquency Act, 18 U.S.C. § 5031 *et seq*. That court engaged in no analysis of whether second degree murder would qualify as a crime of violence, and did not hold that it was. "In this case, there is no question that the first two requirements for transfer are met: (1) Defendant was seventeen years old at the time of the alleged criminal acts, and (2) second-degree murder, if committed by an adult, would be a felony crime of violence. Only the third requirement of § 5032—that transfer be 'in the interest of justice' —is in dispute." 704 F.3d at 1222.

Similarly, in *Begay*, the circuit court did not analyze whether a reckless second degree murder would constitute a crime of violence. There, the court found the evidence of premeditation insufficient to sustain the conviction of first degree murder. "Based on the evidence adduced at trial, it is equally likely that the defendant committed the murders in a fit of rage or otherwise in the heat of passion caused by his exchange with the victims immediately prior to the shooting as it is that he committed the murders with a 'cool mind' after reflection." 567 F.3d at 550. The court declined to reduce the conviction to one of second degree murder because the government had not argued for it.

However, the court cited precedent, *United States v. Bracy*, 67 F.3d 1421, 1430 (9th Cir.1995), for the proposition that conviction on an underlying offense is not necessary to establish a prerequisite crime of violence under § 924(c)(3), and thus sustained a conviction under that statute based on the commission (without conviction) of a second degree murder. (On rehearing *en banc*, the Ninth Circuit concluded there was sufficient evidence of premeditation to sustain the first degree murder conviction. 637 F.3d 1038 (9th Cir. 2011).)

Similarly, in *Wilson*, the circuit court engaged in no analysis whether a reckless second degree murder satisfied *Fernandez-Ruiz*. Indeed, although decided after *Fernandez*-Ruiz, Wilson was argued and submitted on November 17, 2006 only three weeks after the October 26, 2006 decision in the *Fernandez-Ruiz*.

Indeed, it is possible that none of these cases considered the applicability of *Fernandez-Ruiz*, nor that the issue was raised or even relevant (*i.e.* because the modified categorical approach was not applicable to eliminate the concern).

Respondent argues that the heightened degree of reckless required by § 1111 makes the difference. But, neither *Leocal* nor *Fernandez-Ruiz* were founded upon the distinction of the degree of negligence or recklessness, rather upon the absence of intentional conduct necessary to establish the "use" of force. "The effect of our holdings [in *Fernandez-Ruiz* and its progeny] is that in order to be a predicate offense under either 18 U.S.C. § 16 approach, the underlying offense must require proof of an *intentional* use of force or a substantial risk that force will be *intentionally* used during its commission." *United States v. Gomez-Leon*, 545 F.3d 777, 787 (9th Cir. 2008) (emphasis in original).

In *Leocal*, the Court concluded that " 'use' requires active employment…[it] most naturally suggests a higher degree of intent than negligent or merely accidental conduct." 543 U.S. at 9. The Court noted: "This case does not present us with the question whether a state or federal offense that requires proof of the *reckless* use of force against a person or property of another qualifies as a crime of violence." *Id.* at 13.

In *Fernandez-Ruiz*, the Ninth Circuit relied on the reasoning of *Leocal* to

44

conclude that "subjective awareness of possible injury is not the same as the *intentional* use of physical force against the person of another," and thus "neither recklessness nor gross negligence is a sufficient mens rea to establish that a conviction is for a crime of violence under § 16." 466 F.3d at 1130 (emphasis in original). "Reckless conduct, as generally defined, is not purposeful." *Id.* "Thus, the reckless use of force is 'accidental' and crimes of recklessness cannot be crimes of violence." *Id.*

That § 1111 requires that the degree of recklessness display "extreme disregard for human life" does not alter the lack of intentionality.

It does alter the type of risk ignored, e.g. that death would result, rather than merely injury. But neither *Leocal* nor *Fernandez-Ruiz* were concerned with the degrees of potential harm. Indeed, *Fernandez-Ruiz* relied upon the Fourth Circuit's decision in *Bejarano–Urrutia v. Gonzales*, 413 F.3d 444 (4th Cir.2005), finding *Leocal* controlling over a statute requiring "reckless disregard for human life." 466 F.3d at 1127-1128.

The § 1111 standard also requires that the recklessness evidence "extreme disregard" of the risk of injury. In contrast, in addressing recklessness, the *Fernandez-Ruiz* referenced a "conscious disregard" of the risk. 466 F.3d at 1130. However, Respondent does not explain how the degree of disregard converts recklessness into intentionality. Indeed, it is the lack of intentionality that distinguishes second degree murder from first degree murder. "The mental element of second-degree murder is 'malice aforethought.' Malice aforethought does not require an element of willfulness if the existence of that malice is inferred from the fact that defendant acted recklessly with extreme disregard for human life." *United States v. Houser*, 130 F.3d 867, 872 (9th Cir. 1997).

As the panel observed in *Covarrubias Teposte v. Holder*, 632 F.3d 1049 (9th Cir. 2011), it may seem counterintuitive to apply *Fernandez-Ruiz* to some flavors of reckless conduct which demonstrate outlandish conduct, the holding still controls:

> Shooting a gun in the direction of another person seems like a paradigm of violent action. The shooter's indifference to the result of his dangerous act might be thought sufficient to call it a "use" of

force. But our *en banc* precedent in *Fernandez–Ruiz* stands in the way of a doctrinal development that would acknowledge the common sense view that shooting at an inhabited structure, whether intentionally or recklessly, is a crime of violence warranting removal under the immigration laws.

*Id.* at 1056, n. 2.

Consequently, even though it must be coupled "with extreme disregard for human life", second degree murder under § 1111 can be committed unintentionally, e.g. "recklessly," and thus under *Fernandez-Ruiz* cannot be a crime of violence.

### 3.  Enumeration of Murder in Other Portions of § 924

Respondent argues that even § 924(c) itself specifically contemplates murder being a crime of violence, citing 18 U.S.C. §§ 924(c)(5)(B)(i) (providing for enhanced penalties if the crime of violence is murder "as defined in 18 U.S.C. § 1111," which would include second degree murder); and § 924(j)(1) (same).  But these sections do not expand what qualifies as a crime of violence, but instead provide for enhanced sentencing for certain crimes of violence, including those that constitute murder.

Murder under § 1111 incorporates both intentional and unintentional homicide. Under the limitations of *Fernandez-Ruiz*, only the former is a crime of violence under § 924(c).  On the other hand, crimes of violence under § 924(c) include not only murder (or at least intentional murder), but various other crimes as well.  Where the subset of murder and crimes of violence overlap (*i.e.* intentional murder), the heightened sentencing in sections 924(c)(5) and §924(j) applies.  Accordingly, the exclusion of unintentional murder does not render the references to murder in those sections illogical or a nullity.  Thus the enumeration of murder neither presumes nor requires that crimes of violence incorporate all forms of murder.

### 4.  Modified Categorical Approach

Neither Movant nor Respondent address the application of the modified categorical approach.

Assuming *arguendo* that § 1111 is a divisible statute, *see Descamps*, 570 U.S.

46

254, the undersigned has identified nothing in the cognizable record to narrow the version of offense applied to Movant.

Movant's plea agreement simply mandated a plea to "Second Degree Murder, in violation of Title 18, United States Code, Section 1111." (CR Doc. 46 at 1.) The Factual Basis did not narrow it to an intentional crime, but identified the required "malice aforethought" as including "to kill either deliberately and intentionally or recklessly with extreme disregard for life." (*Id.* at 5.) The specific facts simply related that Movant "shot [the victim] in the head," (*id.* at 6), and thus did not identify a specific *mens rea*.

### 5.  Conclusion re *Mens Rea*

Based on the foregoing, the undersigned concludes that Movant's conviction under § 1111 could have been based upon a showing of reckless conduct, and under *Fernandez-Ruiz,* that precludes this conviction from constituting a crime of violence. Accordingly, Movant's conviction did not qualify under the force clause in § 924(c)(3)(A), and his conviction under § 924(c) in Count Two cannot be supported on that basis.

### B.  SUMMARY RE MERITS OF CLAIM

Movant's Motion is barred by his explicit waiver in his Plea Agreement, notwithstanding the intervening decision in *Class*, and thus should be dismissed with prejudice.

In the event the Court concludes that Movant's Motion is not barred by his waiver, then Movant's original Motion, is based on *Johnson*, and was timely filed within one year of that decision. His Amended Motion relates back to the filing of the original Motion, and thus is timely.

Movant did not raise his claims on direct appeal, and they are procedurally defaulted. However, he has shown cause, based on the unavailability of his claim, and

47

prejudice to excuse his procedural default.

Because the rule in *Johnson* must apply to the residual clause in § 924(c)(3)(B), and that rule renders that provision unconstitutionally vague, Movant's conviction under § 924(c) cannot be sustained under §924(c)(3)(B), and must qualify under § 924(c)(3)(A) if it is to be sustained.

Movant's conviction for second degree murder under § 1111 does not qualify as a crime of violence under §924(c)(3)(A) because it could have been based on reckless conduct, as precluded under the controlling Ninth Circuit law in *Fernandez-Ruiz*

Therefore, if the Motion is not barred by waiver, then because Movant's conviction on Count Two under § 924(c) is supported under neither §924(c)(3)(A) or § 924(c)(3)(B), , the conviction cannot stand.

## C.  RELIEF

To the extent that the Court may conclude that the Motion is not barred by Movant's waiver, then upon finding a basis for relief, 28 U.S.C. § 2255(b) directs that a court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Having concluded that Movant's conviction on Count Two was unsupportable under §924(c)(3)(B) because it is unconstitutionally vague, and unsupportable under § 924(c)(3)(A) because § 1111 does not provide the requisite *mens rea*, the Court should vacate the portions of the judgment convicting Movant of Count Two and sentencing him to 120 months imprisonment and 5 years supervised release on that count.

## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2255 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a

48

proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Motion to Vacate is brought pursuant to 28 U.S.C. § 2255, and challenges Movant's federal criminal judgment or sentence. The recommendations if accepted will result in Movant's Motion being resolved adversely to Movant. Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on procedural grounds of waiver. Under the reasoning set forth herein, jurists of reason would find it debatable whether the district court was correct in its procedural ruling, and that Movant states a valid claim of the denial of a constitutional right. Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Motion to Vacate, a certificate of appealability should be granted.

/ /

/ /

/ /

49

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Movant's Amended Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed February 16, 2017 (Doc. 12) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that to the extent this recommendation is followed in the court's judgment, a certificate of appealability should be **GRANTED**.

## VI.  EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 10, Rules Governing Section 2255 proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: July 6, 2018

16-8138r RR 18 07 02 on HC.docx

_____
James F. Metcalf
United States Magistrate Judge